**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **KEVIN M. COOPER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 11-00167-GPM** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Petitioner Kevin M. Cooper, who is currently serving a life sentence in the custody of the Bureau of Prisons, brings this action pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, Petitioner's motion is **DENIED**.

### FACTUAL BACKGROUND

On April 8, 2008, Petitioner Kevin M. Cooper was indicted for one count of conspiracy to distribute and possession with the intent to distribute one hundred grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Mr. Cooper represented himself at trial with standby counsel present.  On August 7, 2008, the jury found Mr. Cooper guilty.

The following   factual background has been taken from the direct appeal decision in Mr. Cooper's case rendered by the United States Court of Appeals for the Seventh Circuit on January 11, 2010.

> Initially, Cooper proceeded with an appointed lawyer, Rodney Holmes. Apparently, he was unhappy with Holmes, and so at a pretrial hearing held on June 18, 2008, he asked the court to dismiss Holmes and permit him to proceed *pro se*. Although the court did not explore Cooper's reasons for his dissatisfaction with Holmes, it did ask him a series of questions relating to his request for self-representation. Included among those questions were inquires about his

understanding of the charges against him, his knowledge of possible penalties, any experience he had with self representation, his education, and his knowledge of trial procedures. The court specifically mentioned the Federal Rules of Evidence and warned Cooper that it would not make exceptions on his behalf. It also told Cooper that it would furnish standby counsel to help him with legal questions. Finally, it cautioned Cooper about the risks of representing himself. Cooper, who noted that he had successfully represented himself in state court in a trial involving charges for attempted murder and aggravated battery, assured the court that he understood all of this and wanted to proceed on his own. The court never mentioned to Cooper that his legs might be shackled.

Although the record does not reflect why, Cooper's legs were shackled throughout the three-day trial. In order to conceal this fact from the jury, Cooper sat at a skirted table. He stood only when the jury entered and left the courtroom, Otherwise, to ensure that the jury did not see the shackles, he avoided moving around while questioning witnesses. He was unable to approach the bench when handling exhibits, and he gave his opening and closing arguments from a seated position.

At the trial, the government introduced a number of witnesses who testified that they had purchased heroin from Cooper, or that they had sold heroin to him, or that they had seen him selling to others. In general, it was the testimony from these witnesses that established Cooper as someone who had dealt in at least 100 grams of heroin . . . .

Some of the evidence was highly prejudicial to Cooper. Before trial, fearing the government might bring up the fact that some of his buyers had died from heroin overdoses, Cooper moved to exclude any autopsy reports of those deaths. The court agreed to do so, but at trial it permitted the government to make a number of references to the deaths. Cooper objected repeatedly . . . .

. . . .

. . . .

After the jury convicted Cooper, the court ordered the preparation of a Presentence Investigation Report ('PSR'). The PSR . . . . produced a recommended guidelines range of 360 months to life.

At the sentencing hearing, the court heard victim-impact evidence from family members of those who had died from the overdoses. . . . [The court] left no doubt about the way in which it wanted to exercise its discretion, saying 'if there were no guidelines and if I have unfettered discretion, I would give you life.' It justified that decision on several grounds. . . .The court also found . . . a life sentence was necessary to reflect the seriousness of Cooper's offense, to provide adequate deterrence, and to protect the public from him in the future. On

that basis, the court imposed a life sentence, and Cooper filed an immediate notice of appeal.

*See United States v. Cooper*, 591 F.3d 582, 584 (7th Cir. 2010).

## PROCEDURAL HISTORY

### A. Direct Appeal

On November 17, 2008, this Court sentenced Mr. Cooper to a guideline sentence of life imprisonment, eight years supervised release, and a special assessment of one hundred dollars. Mr. Cooper, with the assistance of counsel, appealed the conviction and sentence. On January 11, 2010, the Seventh Circuit affirmed the conviction and rejected the following of Mr. Cooper's arguments: 1) this Court failed to warn him properly about the dangers of self-representation; 2) he was denied a fair trial because the Court ordered him to be shackled during trial proceedings; and 3) the trial was irreparably tainted by this Court's admission of evidence of five fatal overdoses. *United States v. Cooper*, 591 F.3d 582, 589 (7th Cir. 2010). On June 28, 2010, the United States Supreme Court denied Mr. Cooper's petition for a writ of certiorari.

### B. Federal Habeas Petition

Mr. Cooper filed his *pro se* petition to vacate, set aside or correct sentence on March 7, 2011. Pursuant to this Court's Order, the Government responded to Mr. Cooper's Section 2255 motion on September 30, 2011. Mr. Cooper raises the following grounds for relief.

> **Claim One:** appellate counsel was ineffective for failing to request an en banc review of the case, failing to raise speedy trial violations, failing to argue Mr. Cooper's due process was violated by his shackling during trial, and failing to argue compulsory clause violations.

> **Claim Two:** the trial court violated Mr. Cooper's due process rights when the trial judge made impermissible statements to a witness and to Mr. Cooper in front of the jury.

> **Claim Three:** the trial court violated Mr. Cooper's right to speedy trial by denying his motion to dismiss for speedy trial violations.

**Claim Four:** Mr. Cooper's due process and confrontation clause rights were violated because the trial court limited the time and scope of his cross examination of witnesses.

**Claim Five:** the Government violated Mr. Cooper's due process rights by withholding exculpatory evidence from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

**Claim Six:** the trial court violated Mr. Cooper's due process rights by requiring he be shackled to a skirted table during trial.

**Claim Seven:** standby counsel was ineffective for failing to make objections, failing to advise Mr. Cooper to obtain a jury consultant, failing to assist in the pre-sentence investigation, violating attorney client privilege, and failing to object to certain discovery requests.

**Claim Eight:** Mr. Cooper's due process rights were violated because the amount of drugs referenced in the indictment varied from the amount of drugs reflected in the jury's verdict.

**Claim Nine:** Mr. Cooper's due process rights were violated by the trial court's admission of what the court knew to be false evidence and false testimony.

**Claim Ten**: the trial court violated Mr. Cooper's due process rights by allowing the Government to use irrelevant victim impact witnesses at sentencing.

**Claim Eleven:** Mr. Cooper's due process rights were violated because the trial court allowed him to be tried on a fraudulent grand jury indictment.

**Claim Twelve:** the trial court violated Mr. Cooper's due process rights by permitting his conviction when the Government failed to prove the mens rea of the conspiracy charge.

**Claim Thirteen:** Mr. Cooper's due process rights were violated because the jury panel did not represent a fair cross section of the community.

**Claim Fourteen:** the Government violated Mr. Cooper's due process rights through the selective and vindictive prosecution of Mr. Cooper.

**Claim Fifteen:** the trial court violated Mr. Cooper's due process rights by imposing a sentence that was illegal because the indictment and jury verdict were inconsistent.

## <u>ANALYSIS</u>

**A. Legal Standard**

    1.  <u>Collateral review under 28 U.S.C. § 2255</u>

In general, a court must grant a request to vacate, set aside, or correct a federal prison sentence when "the sentence was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary circumstances." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996). Moreover, "relief under Section 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Therefore, relief under Section 2255 can be granted only if an error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quoting *Oliver v. United States,* 961 F.2d 1339, 1341 (7th Cir. 1992)).

    2.  <u>Evidentiary hearing</u>

A Section 2255 motion does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). Mere speculation does not warrant an evidentiary hearing, as the petitioner must file a detailed and specific affidavit showing "the petitioner has actual proof of his allegations beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). It is well established that the affidavit is "a threshold requirement; its absence precludes the necessity of a hearing." *Id.*

In the present case, Mr. Cooper's petition does not request an evidentiary hearing, nor is a hearing warranted. In both his petition and his reply to the Government's response, Mr. Cooper neither requested an evidentiary hearing nor provided an affidavit setting forth a specific basis for relief. Mr. Cooper did include an affidavit in his supplemental reply to the Government's response. However, this affidavit merely restates Mr. Cooper's unsupported assertions. After careful review of the petition, files, and records, the Court concludes that any factual matters raised by the motion may be resolved on the papers and an evidentiary hearing is not required in this case.

### B.  Procedurally Defaulted Claims

A Section 2255 petition can be procedurally defaulted and is "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Consequently, a Section 2255 petition cannot raise: "(1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal." *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States,* 26 F.3d 717 (7th Cir. 1994).

A claim that has been procedurally defaulted may only be raised in a Section 2255 motion if the defendant shows "actual innocence" or cause for the default and actual prejudice. *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008). Mr. Cooper can establish cause for the default either by showing ineffective assistance of counsel or by showing an external impediment that prevented him from presenting these arguments prior to this Section 2255 motion. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   Actual prejudice requires a showing that, but for the errors

at trial, there is a "reasonable probability that the result of the trial would have been different." *Strickler v. Greene*, 527 U.S. 263, 299-30 (1999).

Mr. Cooper's Section 2255 motion alleges fifteen claims for relief. The Court finds claims two through six and eight through fifteen are procedurally defaulted. Claim one and seven must be dismissed on the merits.

   1.  <u>Claim Two: The Trial Judge was Biased and Impartial</u>

Mr. Cooper argues various events during trial prove the trial judge was biased.  First, Mr. Cooper alleges the undersigned district judge was biased because during Government witness Joshua Greer's testimony, this judge stated to the witness, "you were in jail for attempted first degree murder." After reviewing the transcript of Mr. Greer's testimony, the Court is unable to locate this statement in the record. Mr. Cooper also contends the trial judge made numerous impermissible comments at trial regarding Mr. Cooper's time in prison; namely, "you are going to die in federal prison." *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM (Doc. 115).

A review of the record reveals the undersigned district judge told Mr. Cooper "you are going to die in federal prison," during the *sentencing* phase of the trial; not the guilt phase of the trial.  *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM (Doc. 115). The Seventh Circuit held the language used by the Court during sentencing was appropriate. *United States v. Cooper*, 591 F.3d at 591 (the district court "had every right to tell Cooper (even bluntly) that he was getting a life sentence"). Because Mr. Cooper has not alleged any changed circumstances, this argument is foreclosed. *See Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir. 1995) ("In the absence of changed circumstances of fact or law, we will not reconsider an issue which was already decided on direct appeal.").

Mr. Cooper's remaining arguments in claim two are procedurally defaulted because Mr. Cooper could have made these claims on direct appeal, but did not. A defendant convicted of a crime may directly appeal his conviction because of a biased or impartial trial judge. *See United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985) (alleged bias of trial judge reviewed on direct appeal). On direct appeal, Mr. Cooper failed to argue the trial judge was biased, so this claim fails.

Mr. Cooper's claim for bias also lacks merit. Mr. Cooper concedes the jury would have learned of Government witness Joshua Greer's criminal history regardless of the judge's statement that Mr. Greer was in jail for attempted first degree murder. (Doc 1, p. 4). Moreover, the Supreme Court has held statements of impatience, dissatisfaction, annoyance, and anger, are within the bounds of what imperfect men sometimes display. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).   These statements do not establish bias. *Id*. Mr. Cooper's claim is procedurally defaulted and meritless.

2.   Claim Three: Speedy Trial Violations

Mr. Cooper contends this Court abused its discretion when it denied his motion for speedy trial violations on August 5, 2008. A defendant may directly appeal his conviction because the trial judge improperly denied a motion for dismissal. *See United States v. Green*, 757 F.2d 116 (7th Cir. 1985) (alleged improper denial of dismissal motion reviewed on direct appeal). Mr. Cooper did not appeal this point.  Consequently, Mr. Cooper's speedy trial claim is procedurally defaulted.

Mr. Cooper's claim also lacks merit because the Court held no speedy trial violation occurred and Mr. Cooper has yet to demonstrate that the Court's calculation was wrong. *See United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Doc. 57)

("Defendant's right to speedy trial has not been violated. His motion [55] is denied"). This claim fails.

3.  Claim Four: Limitation of Mr. Cooper's Cross Examination

Allegedly, Mr. Cooper's Fifth and Six Amendment rights were violated when the undersigned district judge limited the time and the scope of his cross examination of witnesses. This claim is procedurally defaulted because it should have been brought on direct appeal. *See United States v. Smith*, 454 F.3d 707 (7th Cir. 2006) (alleged improper limitation of defendant's cross examination of Government witness reviewed on direct appeal).

The claim is also meritless because Mr. Cooper has not shown cause and cannot show prejudice. The Court is empowered to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." FED.R.EVID. 611(a). The Seventh Circuit has held that a trial court may limit cross-examination "after the questioner has had a reasonable chance to pursue the matters raised on direct." *United States v. Vest,* 116 F.3d 1179, 1186 (7th Cir. 1997). The record clearly reflects Mr. Cooper was given ample opportunity to cross examine each witness; the scope of his examinations were only limited once the Court believed Mr. Cooper to be wasting everyone's time. *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Docs. 82-84). Again, this claim fails.

4.  Claim Five: Brady Violations

Mr. Cooper contends his Fifth Amendment due process rights were violated because of various *Brady* violations by the Government. More specifically, Mr. Cooper contends the Government violated *Brady* by: not revealing that Government witness Chelsey Little lied about

being convicted of a felony on her Air Force application.   Mr. Cooper also claims the Government did not reveal that witness James Charles fabricated testimony in trial when he said that some of the heroin Mr. Cooper sold was laced with fentanyl.

These alleged Brady violations have never been mentioned until this Section 2255 motion. *See U.S. v. Roberts*, 534 F.3d 560 (7th Cir. 2008) (alleged Brady violations during trial reviewed on direct appeal). Therefore, this claim is procedurally defaulted because it should have been brought on direct appeal.

The alleged Brady violations are also baseless because Mr. Cooper cannot show cause and actual prejudice. Mr. Cooper claims that *Brady* was violated because evidence was withheld from the jury.  Brady requires prosecutors to turn over exculpatory evidence to the *defense*, not the jury. *See Brady v. Maryland*, 373 U.S. 83 (1963) (holding that exculpatory evidence possessed by the prosecution must be turned over to the defendant). Moreover, there is simply no evidence Chelsea Little *did* lie on her air force application.

The second alleged Brady violation is baseless because there is no evidence in the record that James Charles fabricated testimony and there is certainly no evidence the Government knew about this alleged fabrication. Both of the alleged Brady violations are unsubstantiated assertions that find no corroboration in the record. These claims fail.

5.   Claim Six: Mr. Cooper's Shackling during Trial.

This sixth claim by Mr. Cooper is procedurally defaulted because Mr. Cooper made the argument on direct appeal and the Seventh Circuit resolved the issue in favor of the Government. *See United States v. Cooper*, 591 F.3d 582, 589 (7th Cir. 2010) ("Although it is regrettable that the court did not explain the shackling decision, we find no plain error."). As stated above, issues raised on direct appeal cannot be raised in a Section 2255 motion unless petitioner can show

changed circumstances. *See Belford*, 975 F.2d at 313. There are no allegations of changed circumstances. This argument states no reason for habeas relief

6. <u>Claim Eight: Variance in the Amount of Heroin at Trial</u>

A variance between the amount of drugs cited in the indictment from the amount of drugs reflected in the jury's verdict is an issue Mr. Cooper could have directly appealed. *See United States v. Noble*, 754 F.2d 1324 (7th Cir. 1985) (alleged variance in evidence reviewed on direct appeal). Yet, Mr. Cooper failed to make this claim on direct appeal, which results in procedural default.

The claim is also meritless because Mr. Cooper cannot show cause or actual prejudice. The Court cannot understand what Mr. Cooper's argument is here. The only difference between the two documents is the indictment states "100 grams or more" and the special verdict says "at least 100 grams[.]" *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Docs. 1, 66). These two phrases have the same meaning. The difference in wording is miniscule and does not warrant relief.

7. <u>Claim Nine: False Evidence Used at Trial</u>

Mr. Cooper contends the Government admitted false evidence at trial by presenting heroin that did not belong to him. Mr. Cooper could have made this claim on direct appeal, but did not. A defendant convicted of a crime may directly appeal his conviction if fabricated evidence was used at trial. *United States v. Williams*, 128 F.3d 1128 (7th Cir. 1997). This claim is also meritless because Mr. Cooper fails to provide any additional evidence to corroborate his bald assertions about false evidence.

8.  Claim Ten: Victim Witnesses were Irrelevant

Mr. Cooper alleges the Government's victim impact witnesses at sentencing were irrelevant and should not have been allowed.  According to Mr. Cooper, the Government never linked him to the fatal overdoses that were the subject of the witness statements. Once again, Mr. Cooper presents an argument that has already been resolved by the Court of Appeals in favor of the Government.  The Seventh Circuit determined the witness statements were admissible during sentencing because it "throws light on the nature and circumstances of Cooper's offense, and his history and characteristics." *See Cooper*, 591 F.3d 582, at 584. Because the Seventh Circuit resolved this issue, and because Mr. Cooper cannot show any changed circumstances, this claim is procedurally defaulted.

9.  Claim Eleven: Grand Jury Fraud

Mr. Cooper argues his Fifth Amendment rights were violated because the grand jury proceedings were conducted in a fraudulent manner. He claims the grand jury never actually convened and the grand jury foreman's signature was forged using a rubber stamp. Mr. Cooper also argues he was not granted access to grand jury transcripts. This claim is procedurally defaulted because Mr. Cooper failed to make this claim on direct appeal. *See United States v. Thomas*, 5520 F.3d 729 (7th Cir. 2008) (alleged improper grand jury proceedings reviewed on direct appeal).

This claim is also meritless. The Supreme Court has held when the defense requests the minutes of a grand jury, the burden is on the defense to show a particularized need that outweighs the general policy of secrecy. *Pittsburgh Plate Glass Co. V. United States*, 260 U.S. 395, 401 (1959). Under Federal Rule of Criminal Procedure 6, "the court may authorize

disclosure—at a time, in a manner, and subject to any other conditions that it directs." FED. R. CRIM. P. 6(3)(E).

Mr. Cooper has not alleged cause for failing to bring this claim on direct appeal. In his claim, Mr. Cooper states "every time [he] would request ministerial records, the district court judge would deny petitioner's request . . . ." (Doc 1, p. 19).  Mr. Cooper requested grand jury transcripts on two occasions. The first request occurred on May 28, 2010, and the second occurred on July 2, 2010. Both of these requests were filed more than eighteen months after the date of the jury verdict. In the second request, Mr. Cooper explicitly stated the grand jury transcript was needed to avoid the possibility of injustice in *another* judicial proceeding. Mr. Cooper cannot show actual prejudice here, because he did not request the grand jury transcript until months after his criminal case.

Mr. Cooper's contention about how the grand jury never convened is baseless because he provides no evidence to support the conclusion. He merely claims to know a former prosecutor who informed him that prosecutors sometimes use a rubber stamp signature instead of convening a grand jury. This evidence does not rise to the level necessary to negate the fact that on April 08, 2008, an indictment was signed by the jury foreperson and filed with this Court.

10. Claim Twelve: Government Failed to Prove All Elements

After both a guilty verdict and a Seventh Circuit affirmation of the verdict, Mr. Cooper now alleges the Government failed to prove all elements, including the mens rea element, of the conspiracy charge. This claim should have been brought on direct appeal. *See United States v. Hoogenboom*, 209 F.3d 665 (7th Cir. 2000) (Government's alleged failure to prove defendant possessed the requisite mens rea reviewed on direct appeal). This claim is procedurally defaulted.

The claim is also baseless because there is ample evidence Mr. Cooper conspired with others to sell heroin. At least five witnesses testified Mr. Cooper provided them heroin on credit under the mutual understanding Mr. Cooper would receive a percentage of their proceeds. *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Docs. 82-83, p.157, 403, 453, 482, 537). The jury instructions state the Government *must* prove "that Kevin Cooper knowingly became a member of the conspiracy with an intention to further the conspiracy." *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Doc. 64, p. 8). The mens rea element was indeed part of the jury's determination. There is no actual prejudice and this claim fails.

11. <u>Claim Thirteen: Cross-Section Violation</u>

Mr. Cooper also contends he was denied due process under the Fifth Amendment because the jury panel did not represent a fair cross section of the community. The United States Supreme Court has held juries must be drawn from a pool fairly representative of the community. *See Taylor v. Louisiana,* 419 U.S. 522, 622 (1975). Consequently the jury wheels, pools, panels, or venires from which juries are drawn must not systematically exclude distinctive groups of the community. *Id.*

Again, Mr. Cooper has forfeited this argument because he did not make it on direct appeal. *See United States v. Guy*, 924 F.2d 702 (7th Cir. 1991) (alleged systematic exclusion of jurors from the venire reviewed on direct appeal).

This claim is also meritless. Mr. Cooper argues that the Government must have arbitrarily excluded African Americans because the trial was conducted in East St. Louis, Illinois and only four African Americans were in the jury pool. Mr. Cooper incorrectly assumes the Southern District of Illinois consists of *only* East St. Louis, Illinois. However, under the Southern District

of Illinois' Plan for the Random Selection of jurors, the Court draws prospective jurors from eleven counties for cases heard here at the East St. Louis Courthouse. *See United States District Court, Southern District of Illinois Plan for the Random Selection of Jurors*, Revised November 2011, http://www.ilsd.uscourts.gov/Forms/JuryPlan.pdf (last visited December 5, 2012). Mr. Cooper has made no legitimate showing of disproportionality; therefore, he cannot show actual prejudice.

12. Claim Fourteen: Selective and Vindictive Prosecution

Mr. Cooper argues he was the subject of selective and vindictive prosecution because he was prosecuted without a proper Government investigation. He claims he was only prosecuted because of prosecutorial malice stemming from a newspaper article on his case. According to Mr. Cooper, the Government offered plea deals to witnesses in exchange for their false testimony against Mr. Cooper.

This claim is procedurally defaulted because it was not argued on direct appeal. *See United States v. Jarrett*, 447 F.3d 520 (7th Cir. 2006) (alleged vindictive prosecution by Government reviewed on direct appeal). Just like Mr. Cooper's other claims of conspiracy, this claim too is without merit. Over the course of the trial, the Government put on evidence of its investigation before the jury. Mr. Cooper presents absolutely no evidence the Government witnesses falsely testified. There is no showing of actual prejudice; this claim fails.

13. Claim Fifteen: Illegal Sentence

Mr. Cooper's argument that his life sentence was illegal and violative of his due process rights disregards the Seventh Circuit's previous opinion to the contrary. *See United States v. Cooper*, 591 F.3d 582, 590-91 (7th Cir. 2010). Mr. Cooper claims his sentence was illegally

increased because language in the indictment stated "100 grams or more" and the jury's special verdict stated Mr. Cooper possessed "at least 100 grams."

Mr. Cooper made this argument on direct appeal and the Seventh Circuit resolved the issue in favor of the Government. Again, "100 grams or more" and "at least 100 grams" have the *same meaning*. Mr. Cooper has not alleged changed circumstances, therefore this argument fails.

**C. Ineffective Assistance of Standby Counsel**

Mr. Cooper was initially represented by appointed lawyer, Rodney Holmes. However, at a pretrial hearing on June 18, 2008, Mr. Cooper asked the Court to dismiss Mr. Holmes and to allow Mr. Cooper to proceed *pro se*. *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Doc. 22). The Court asked Mr. Cooper a series of questions about his understanding of the charges against him, the possible penalties, experience with self-representation, education, and knowledge of trial procedures. *Id.* (Doc. 48, p. 13-14). The Court cautioned Mr. Cooper about the risks of representing himself and told him that he would be provided with standby counsel. *Id.* (Doc. 48, p. 14). Mr. Cooper noted he had successfully represented himself in a state court trial, and that he wanted to proceed on his own. *Id.* (Doc. 48, p. 7-8).

There is no Supreme Court precedent that establishes a right to effective assistance of standby counsel. *See United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992) ("This court knows of no constitutional right to effective assistance of standby counsel"). The Supreme Court has recognized the goals of a *pro se* litigant may be undermined by the sometimes unsolicited and intrusive participation of standby counsel. *McKaskie v. Wiggins*, 465 U.S. 168, 177 (1984). The Seventh Circuit has held a defendant who elected to represent himself cannot later claim

ineffective assistance of standby counsel unless, during trial, he relinquished his right to self-representation. *Simpson v. Battaglia*, 458 F.3d 585, 596 (7th Cir. 2006).

Here, Mr. Cooper argues he was denied effective assistance by Ms. Susan Gentle, his standby counsel. Mr. Cooper claims he was prejudiced because his standby counsel failed to make objections, failed to advise him to obtain a jury consultant, did not assist in the pre-sentence investigation, violated attorney client privilege, failed to sit with him during sentencing, and did not object to certain discovery requests.

Mr. Cooper never relinquished his *pro se* representation. The following colloquy demonstrates Mr. Cooper understood he was representing himself at trial and that he waived any right to ineffective assistance of standby counsel:

> THE COURT: Mrs. Gentle has been decent enough to show up and serve as standby counsel, and my clerk informed me, Mr. Cooper, that you wanted her to sit with you at the table.
>
> MR. COOPER: Yes, I do, your honor
>
> THE COURT: I will do that. But I want you to understand a couple of things. First, Mrs. Gentle is not your lawyer. She's not prepared for this case. Do you understand that?
>
> MR. COOPER: Yes.
>
> THE COURT: And do you waive any claim of ineffective assistance of counsel against her?
>
> MR. COOPER: Yes, I'm representing myself.

*United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Doc. 82, p. 5).

Mr. Cooper fully understood he was responsible for his own representation. He explicitly waived any ineffective assistance of standby counsel claims.  Accordingly, this claim fails.

### D. Ineffective Assistance of Appellate Counsel

The Supreme Court has held a defendant in a criminal case has a right to effective assistance of counsel on the first appeal of his conviction. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). The same standard articulated by *Strickland v. Washington* 466 U.S. 668 (1984) for ineffective assistance of trial counsel is also the applicable standard for ineffective assistance of appellate counsel. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (*citing Strickland*, 466 U.S. 668.

Under *Strickland*, counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To succeed on an ineffective assistance of counsel claim, a petitioner must prove (1) counsel's performance fell below an "objective standard of reasonableness," and (2) "there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v. McKee,* 598 F.3d 374 (7th Cir. 2010) (*citing Strickland*, 466 U.S. at 688). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Smith,* 598 F.3d at 374, (*quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Here, Mr. Cooper first argues his appellate counsel was ineffective for failing to request an en banc review of his case. There is no precedent that requires an attorney to request an en banc hearing. The Federal Rules of Appellate Procedure state that an en banc rehearing is "*not favored*" and will "ordinarily not be ordered." FED. R. APP. P. 35(a) (emphasis added).

Even if Mr. Cooper could show appellate counsel was deficient by not requesting an en banc rehearing, there is no prejudice. Would the Seventh Circuit have granted such a request? We do not know. It is also impossible to know whether an en banc panel would have reversed. There were no dissenting or concurring opinions in the three-judge panel's decision. The panel spoke rather clearly of Mr. Cooper's guilt. Mr. Cooper's first argument fails.

Second, Mr. Cooper argues appellate counsel was ineffective for failing to raise alleged speedy trial violations. Mr. Cooper's speedy trial motions were denied by this Court during the pre-trial stage and were not raised on direct appeal. (Doc. 1, p. 2). This Court found no speedy trial violation occurred because the period between June 2, 2008—when the continuance was granted, and August 5, 2008—the new trial date—was excludable time under the Speedy Trial Act. *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Doc. 57, p. 2) ("the ends of justice served by granting the relatively short continuance outweigh the best interest of the public"). Indeed, the relatively short continuance benefitted Mr. Cooper because it was Mr. Cooper's counsel who requested the delay. *Id.* (Doc. 57, p. 2).

Now, Mr. Cooper argues his appellate counsel should have made this argument on direct appeal. Appellate counsel's decision not to argue this claim on appeal was likely a matter of strategy. There is simply no rational argument here for a speedy trial violation.

The Supreme Court has held "speedy trial violations do not per se prejudice the accused's ability to defend himself." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). Mr. Cooper has not shown actual prejudice resulting from the Government's alleged speedy trial violations.

Mr. Cooper next claims appellate counsel was ineffective for failing to argue Mr. Cooper's due process was violated when he was shackled during the trial. In fact, Mr. Cooper's appellate counsel *did* raise this claim and the Seventh Circuit resolved the issue in favor of the

Government. *See United States v. Cooper*, 591 F.3d 582, 588-89 (7th Cir. 2010) ("Even if we assume that the district court erred when it failed to make any findings about the need to place Cooper in shackles, we see nothing in the record that would establish either that the shackling was a clear or obvious violation of his rights or that it affected the outcome of the proceedings"). Therefore, this argument fails.

Finally, Mr. Cooper contends his appellate counsel was ineffective because he failed to argue Mr. Cooper's compulsory process rights were violated when twenty-seven witnesses were struck from Mr. Cooper's witness list. Allegedly, if the Court would have permitted Mr. Cooper to examine these witnesses, the outcome of the case would have been different. For the following reasons, this argument fails.

The Seventh Circuit has held the Six Amendment right to compulsory process is not absolute. *United States v. Sparkman*, 500 F.3d 678, 682 (7th Cir. 2007). There is no constitutional compulsory process violation unless "the witness denied to the petitioner could have produced relevant and material testimony for his defense." *United States v. De Stefano*, 476 F.2d 324, 330 (7th Cir. 1973). Further, a petitioner's compulsory rights must be weighed against countervailing public interests, such as the interest in the fair and efficient administration of justice. *Id.*

Here, Mr. Cooper has provided no evidence the witnesses would have produced relevant or material testimony. As the following exchange shows, the Court informed Mr. Cooper each witness would have to actually serve some benefit to his case in order to be subpoenaed:

> MR. COOPER: I have a witness list of 30 witnesses and most of these witnesses—some of these witnesses are federal inmates, some of them are state/county inmates, and some of them are on the streets. As me representing myself, there is no way I can obtain federal inmates to appear in court as my witness and county inmates.

THE COURT: There is no way the Court is going to allow you to call 30 witnesses. I wouldn't allow the Government to call 30 witnesses. That's not going to happen. But if there is some witness that actually will go to establish a defense and you can tell me what that is, the Court will do whatever I can to assist you in getting these witnesses.

*United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Doc. 48, p. 15-16).

In fact, during a pretrial hearing, the Court and Mr. Cooper went through all of Mr. Cooper's potential witnesses to determine which witnesses could produce relevant or material testimony. *United States v. Kevin Cooper*, S.D.Ill. Criminal Case No. 08-30066-GPM, (Doc. 48). The Court removed witnesses from the list the Government intended to call or who had nothing to add to Mr. Cooper's case. *Id.* In addition to the four overlapping Government witnesses, the Court subpoenaed two other witnesses to testify on Mr. Cooper's behalf.  Mr. Cooper has made no showing of prejudice. When the witness list is weighed against the best interest of the public, it is clear the delay of trial caused by allowing theses witnesses to testify would not have promoted an efficient administration of justice.

## **CONCLUSION**

In the end, both a jury and a Seventh Circuit panel have decided Mr. Cooper must be held accountable for his actions. After being found guilty of conspiracy to distribute and possession with intent to distribute one hundred grams or more of heroin, Mr. Cooper cannot escape what he did through preposterous allegations of conspiracy between the Government and his trial judge. Mr. Cooper made the decision to deal heroin and he made the decision to represent himself at trial; he must now accept the consequences of these decisions. Mr. Cooper's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED**, and this action is **DISMISSED with prejudice.**  All of Mr. Cooper's pending motions (Docs. 7,11,14, and 15) are **DENIED as MOOT**.   The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED**: December 5, 2012

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge